## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 29 2017, 9:02 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

R. Patrick Magrath
Madison, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Chad A. George,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff*

June 29, 2017

Court of Appeals Case No.
39A01-1612-CR-2740

Appeal from the Jefferson Circuit Court

The Honorable Darrell M. Auxier, Judge

Trial Court Cause No.
39C01-1512-F4-1235

**May, Judge.**

[1] Chad A. George appeals his convictions of Level 3 felony burglary,[1] Level 5 felony criminal confinement,[2] and Class A misdemeanor domestic battery.[3] He presents two issues for our review:

> 1. Whether the State presented sufficient evidence George possessed the requisite intent to commit Level 3 felony burglary; and

> 2. Whether his convictions of burglary, criminal confinement, and domestic battery subjected him to double jeopardy.

The State concedes George's convictions of burglary, criminal confinement, and domestic battery violated his right to be free from double jeopardy. We affirm in part, reverse in part, and remand for resentencing.[4]

## Facts and Procedural History

[2] Tina Cosby and George had been in an "on and off relationship" for several years. (Tr. at 45.) In November 2015, an incident occurred in which George became physically aggressive toward Cosby, including choking her, throwing

---

[1] Ind. Code § 35-43-2-1(2) (2014).

[2] Ind. Code § 35-42-3-3(b)(1) (2014).

[3] Ind. Code § 35-42-2-1.3(a) (2014).

[4] George also asserts his sixteen-year aggregate sentence is inappropriate for his character and offenses. As we modify two of his convictions and remand for resentencing, we need not consider that issue.

her, hitting her in the face, and attempting to force her to swallow medication. Cosby sustained some bruising to her face from this altercation.

[3] On December 23, 2015, Cosby heard a knock on her apartment door, and opened it expecting to see one of her neighbors. Instead, George was at the door and said, "Bitch, I bet you didn't think you was [sic] going to see me again." (*Id.* at 50.) George pushed his way into Cosby's apartment despite her attempts to close the door. George said he just wanted to talk to Cosby. Cosby told George to leave her apartment, but he refused. Cosby could smell alcohol on his breath. George was upset with Cosby because she was "talking to these other people" and damaging a case pending against him. (*Id.* at 51.)

[4] When Cosby attempted to exit the apartment, George shoved her, pulled her back by her hair, and caused them both to fall back into a table knocking over a candle and breaking a chair. George then placed his hands around Cosby's neck. Once released, Cosby made a run for her door and placed her right knee into a gap between the door and the door frame to keep George from shutting it. Cosby shouted, "No, Chad. No, no, no." (*Id.* at 52.)

[5] The pair agreed to walk out of the apartment. Once outside, Cosby attempted to "make a beeline [sic]" for her door, (*id.*), to get back inside her apartment, but George grabbed her with one hand on her throat and the other hand pulling her tank top. (*Id.*) A neighbor called 911 after witnessing the altercation and hearing Cosby screaming.

Cosby began walking toward a gas station because "there's [sic] cameras if anything happens." (*Id.* at 53.) George was walking after Cosby until law enforcement arrived and ordered the pair to stop. The pair was instructed to approach Officer Decker. Cosby approached first, and Officer Decker saw her lip was bloody and her shirt was ripped open, exposing her breasts. According to Officer Decker, Cosby was behaving "excited, scared to death, [and] unintelligible." (*Id.* at 89.) While Cosby waited by the patrol car, Officer Decker placed George in handcuffs until other officers arrived. Officer Decker detected the smell of alcohol on George and observed George was unsteady on his feet, so he secured George in the back of the patrol car.

Officer Decker took Cosby back to her apartment and spoke with her there. He noticed a broken chair, an upturned end table, and candle wax on the carpet. Officer Decker took photographs of Cosby's appearance and injuries including: "a defensive wound on the forearm," (*id.* at 93), blood on her lip, and bruising and redness on her face. Cosby indicated at trial that the bruising to her face "was still healing up from the November incident," and was not from December 23. (*Id.* at 60.) Officer Decker also collected Cosby's torn tank top for evidence.

The State charged George with Level 3 felony burglary, Level 5 felony criminal confinement, Level 6 felony attempted strangulation,[5] Class A misdemeanor

---

[5] Ind. Code § 35-42-2-9(b) (2014).

domestic battery, and Class B misdemeanor public intoxication.[6] The State dismissed the Class B misdemeanor charge prior to trial. After a two-day jury trial, George was convicted of burglary, criminal confinement, and domestic battery. The trial court sentenced him to twelve years for burglary, four years for criminal confinement, and one year for domestic battery to be served concurrent with the consecutive felony sentences, resulting in an aggregate sentence of sixteen years.

# Discussion and Decision

## Sufficiency of the Evidence

[9]  When reviewing sufficiency of the evidence to support a conviction, we must consider only the probative evidence and reasonable inferences supporting the verdict. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). We do not reweigh evidence or assess the credibility of witnesses, as that is the role of the fact-finder. *Id.* When confronted with conflicting evidence, we must consider it most favorably to the verdict. *Id.* We affirm a "conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence, but rather the evidence is sufficient if an inference reasonably may be drawn from it to support the verdict. *Id.* at 147.

---

[6] Ind. Code § 7.1-5-1-3(a) (2012).

To prove George committed Level 3 felony burglary, the State was required to show that (1) George, (2) broke and entered the structure of Cosby, (3) with the intent to commit a felony or theft in it, and (4) George's conduct resulted in bodily injury to Cosby. *See* Ind. Code § 35-43-2-1(2) (2014). George argues that, because his stated intent for entering Cosby's residence was to talk, not commit a specific crime therein, the State did not present sufficient evidence for his burglary conviction. We disagree.

"A criminal conviction for burglary requires proof beyond a reasonable doubt of a specific criminal intent which coincides in time with the acts constituting the breaking and entering." *Robinson v. State*, 541 N.E.2d 531, 533 (Ind. 1989), *reh'g denied*. "The intent to commit a felony may be inferred from the circumstances." *Taylor v. State*, 514 N.E.2d 290, 291 (Ind. 1987). A burglary conviction can be sustained from circumstantial evidence alone. *Id.* "Burglars rarely announce their intentions at the moment of entry." *Gilliam v. State*, 508 N.E.2d 1270, 1271 (Ind. 1987), *reh'g denied*. Further, a burglar can have multiple intents during the moment of breaking and entering, and other intents besides committing a felony "would subtract nothing from the reasonability of inferring the concurrent intent to do violence if confronted." *Eby v. State*, 154 Ind. App. 509, 518, 290 N.E.2d 89, 95 (1972), *reh'g denied*.

> Whatever may have been [an intruder's] primary intent or purpose, he must have anticipated that confrontation with the home's inhabitants was not unlikely and that his presence would not be welcome. If a confrontation then occurs and he does commit an act of violence upon the person he then confronts, the

commission of the act is sufficient to justify the inference that he entered with the specific intent to do what he did, provided the occasion arose.

*Id.* at 518, 290 N.E.2d at 95.

[12] One month after the two had been in a physical altercation, George came to Cosby's apartment smelling of alcohol. He greeted her with vulgar language and pushed his way into her apartment as she tried to keep him out. George ignored Cosby's requests to leave her apartment and became violent with her when she attempted to leave. It is reasonable that a jury would infer George possessed a culpable intent to commit a felony when he entered Cosby's apartment. *See, e.g., Baker v. State*, 968 N.E.2d 227, 231 (Ind. 2012) (burglary conviction upheld because intent to commit theft was supported by defendant rummaging through cabinets of the church he broke and entered).

## Double Jeopardy

[13] George's convictions of burglary resulting in bodily injury, criminal confinement resulting in bodily injury, and domestic battery were all proven using the same bodily injury. The State concedes this subjected George to double jeopardy.

[14] According to our Indiana Constitution, "No person shall be put in jeopardy twice for the same offense." Ind. Const. art. I, § 14. A double jeopardy violation occurs if the same bodily injury is used to prove the elements of two separate offenses. *See Carter v. State*, 956 N.E.2d 167, 173-74 (Ind. Ct. App.

2011) (double jeopardy violation when the State did not distinguish injuries that supported burglary charge from those supporting robbery charge), *trans. denied*. We consider the statutes, charging instruments, evidence, and arguments of counsel to determine whether the facts establishing one crime are the same as the facts establishing one or more elements of another crime. *Id.* at 173.

[15] During this incident, Cosby sustained several injuries including a "defensive wound on the forearm," (Tr. at 93), a bloody lip, and "redness" on her forehead. (*Id.* at 61.) At trial, no distinctions were drawn regarding which injuries the jury should use to support which convictions when finding George guilty. The State concedes there was a double jeopardy violation. (*See* Appellee's Br. at 16 ("Because each of these charges require the element of bodily injury and because the jury may have used the same injury to support each conviction, Defendant's convictions cannot stand.").)

[16] The State also concedes the remedy is to reduce George's conviction of Level 5 felony criminal confinement to Level 6 felony criminal confinement, and to reduce his Class A misdemeanor domestic battery conviction to Class B misdemeanor battery, as the reduced charges do not require proof of bodily injury. We agree and order George's convictions reduced accordingly. *See Caldwell v. State*, 43 N.E.3d 258, 269 (Ind. Ct. App. 2015) (burglary conviction reduced to a Class B felony when the same injuries were used to enhance two of defendant's charges), *trans. denied.* As we reduce two of George's convictions, we remand for the trial court to resentence George accordingly.

# Conclusion

The State presented sufficient evidence George had the requisite intent to commit Level 3 felony burglary resulting in bodily injury. However, George's constitutional right to be free from double jeopardy was violated by his conviction of three crimes based on the same bodily injury. Accordingly, we reduce his convictions of criminal confinement and domestic battery to lesser included offenses that do not require proof of bodily injury, and remand for resentencing.

Affirmed in part, reversed in part, and remanded.

Brown, J., and Pyle, J., concur.